UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| YOLANDA ERIETTIE FORD, Wife of/and ROBERT E. FORD | CIVIL ACTION NO. 05-0711-A |
| -vs- | JUDGE DRELL |
| CLECO CORPORATION | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court is a Motion for Summary Judgment filed by Defendant CLECO
Corporation ("CLECO"). (Doc. 37). Plaintiffs Yolanda Eriettie Ford and Robert Ford
oppose the Motion. (Doc. 42). After reviewing the pleadings in this case and the
applicable law, Defendant's Motion will be GRANTED.

Background

Mrs. Ford began working for CLECO as a Call Center Specialist in August 1999.
(Docs. 1 and 37). She subsequently was promoted to Senior Call Center Specialist. In
2002, Mrs. Ford began experiencing serious medical problems, including chronic
abdominal pain, abdominal adhesions, chronic pain syndrome, irritable bowel syndrome
and anxiety/depression. (Doc. 1). Mrs. Ford was on disability leave from May 2003 until
her employment with CLECO was terminated in February 2004. (Docs. 1 and 37).

Mrs. Ford contends CLECO violated the Americans with Disabilities Act ("ADA")
when it terminated her employment. Mrs. Ford alleges that she has a disability, that she

is a "qualified individual" under the ADA and that she suffered an "adverse employment action" because of her disability. (Doc. 1). She claims she is considered disabled because her physical and mental impairments substantially limit one or more of her major life activities from time to time. (Doc. 1). Mrs. Ford also maintains she could perform the essential functions of her job at CLECO with or without reasonable accommodation. (Doc. 1).

In September 2003, anticipating that her short term disability would soon expire, Mrs. Ford made an application for long-term disability with UnumProvident Corporation ("UnumProvident"), CLECO's long-term disability provider. (Doc. 37, Exh. 3). In conjunction with that application, Mrs. Ford's treating physician, Dr. Michael Buck, completed a form in which he twice wrote: "unable to perform any employment at this time." (Doc. 37, Exh. 3). On December 2, 2003, UnumProvident wrote a letter to Mrs. Ford denying long term disability benefits. (Doc. 37, Exh. 4). Mrs. Ford appealed this decision in a letter dated December 24, 2003. (Doc. 37, Exh. 5). Although no evidence was provided, we assume Mrs. Ford's appeal was also denied because she sued UnumProvident pursuant to the Employee Retirement Income Security Act ("ERISA"). (Pltf. depo. p. 76, 80). That suit was settled for an undisclosed sum in November 2005. (Pltf. depo. p. 76). Noting that Plaintiffs originally asserted an ERISA action in this case, which was then deleted in their First Supplemental and Amending Complaint filed June 2005, we infer the settlement with UnumProvident was the likely reason they deleted those allegations. (Docs. 1 and 11). UnumProvident was never a party to the current litigation.

On January 8, 2004, prior to her termination, Mrs. Ford applied for Social Security Disability Insurance ("SSDI"), alleging she had been disabled since April 24, 2003. (Doc. 37, Exh. 6-C; Pltf. depo. p. 125). Following a November 22, 2004 hearing at which Mrs. Ford represented herself, an administrative law judge determined, based upon her testimony and the record, that Mrs. Ford was currently disabled and had been disabled since April 24, 2003. (Doc. 37, Exh. 6-C). Mrs. Ford then began receiving SSDI benefits, including payments retroactive to the date of her disability. Mrs. Ford discussed her Social Security Administration ("SSA") application and its results at her deposition on January 18, 2006:

> Q: Do you agree with the decision that was reached by the hearing officer for the Social Security Administration in this case?
> A: Yes, sir. (Pltf. depo. p. 127).
> ..................................................
> Q: And are you still receiving disability benefits from the Social Security Administration?
> A: Yes, sir. (Pltf. depo. p. 128).
> ..................................................
> Q: Okay. And in order to get these Social Security Disability benefits you had to represent to the Social Security Administration that you were disabled, is that correct?
> A: Yes, sir.
> Q: And that you were unable to work; is that right?
> A: That is correct.
> Q: Okay. So as of the time of the hearing in this matter, November 10th of 2004, you were representing to the Social Security Administration that you were disabled due to Crohn's disease and unable to work?
> A: That is correct.
> Q: And that was truthful when you told that to the Social Security Administration?
> A: That is correct.
> Q: You also represented to the Social Security Administration that you had been disabled from April 24, 2003, until November 10, 2004, and unable to work during that entire period of time; isn't that correct?
> A: I'm sorry. Repeat the question.

Q: You represented to the hearing officer that you were disabled as of the time of the hearing, November 10, 2004, and had been disabled since April 24, 2003; isn't that correct?

A: And could not get a - -correct. Even though I told the Judge that I wanted to go back to work though. I want to make that clear. And he would not approve me going back to work at that time.

Q: I understand. But you represented to the - -

A: Yes.

Q: - - Judge that you had been disabled and continued to be disabled on November 10, 2004, and had been disabled and unable to work since April 24, 2003; isn't that correct?

A: Correct. (Pltf. depo. p. 130-132).


Law and Analysis

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such

allegations are insufficient to defeat a motion for summary judgment.  Brock v. Chevron

U.S.A., Inc., 976 F.2d 969 (5th Cir. 1992).

Under the ADA, a private employer cannot legally discriminate against any

qualified individual with a disability. 42 U.S.C. § 12112.  See also Mason v. United Air

Lines, Inc., 274 F.3d 314 (5th Cir. 2001).  A "qualified individual with a disability" is

defined as "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that

such individual holds."  42 U.S.C. § 12111(8).  An individual who has "a physical or

mental impairment that substantially limits one or more of the major life activities of such

individual" has a "disability" under the ADA.  42 U.S.C. § 12102(2).  To establish a prima

facie case of discrimination under the ADA, a plaintiff must show:  (1) she has a

disability; (2) she was qualified for the job; and (3) she was subject to an adverse

employment decision on account of that disability.  Zenor v. El Paso Healthcare System,

Ltd., 176 F.3d 847 (5th Cir. 1999).

The Supreme Court has recognized that a conflict may arise when a party has

asserted both a SSDI claim and an ADA claim in that the SSDI program benefits people

who are so disabled that they are unable to engage in their previous work or in another

kind of substantial gainful work while the ADA protects disabled employees who can

perform the essential functions of their jobs, including those who can do so with

reasonable accommodation, from discrimination by their employers.  Cleveland v. Policy

Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597 (1999).  A "plaintiff's sworn assertion in

an application for disability benefits that she is, for example, unable to work will appear

to negate an essential element of her ADA case–at least if she does not offer a sufficient explanation." Id. at 806 (internal quotation marks omitted). However, the Court declared that pursuing and receiving SSDI benefits does not necessarily preclude a party from successfully litigating an ADA claim. There also is not a presumption against the party's ADA success. Id. at 797. However, "an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, [the ADA plaintiff] must explain why that SSDI contention is consistent with her ADA claim." Id. at 797. "When faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of her job, with or without reasonable accommodation." Id. at 806 (internal quotation marks omitted). If a plaintiff fails to reconcile her claims that she is disabled and cannot work with her assertion that she can perform her job, or if that explanation is insufficient, then her ADA claim will be judicially estopped by her SSDI claims involving disability. McClaren v. Morrison Mgmt. Specialists, Inc., 420 F.3d 457 (5th Cir. 2005).

The Supreme Court's analysis in Cleveland applies to the facts before us. In a fashion similar to the Cleveland plaintiff, Mrs. Ford requested and received SSDI after the SSA recognized that she became disabled on April 24, 2003; she continued to receive

those disability benefits at the time of her deposition on January 18, 2006; she also filed an ADA claim, asserting she "can perform the essential functions of her job with or without reasonable accommodation" and that she was able to perform those functions in February 2004 when CLECO terminated her employment. It appears contradictory for Mrs. Ford to claim that she was able to work at CLECO at the time of her termination, February 2004, even though she represented to the SSA in January 2004 and November 2004 that she was disabled and unable to work and had been so disabled since April 2003. If we are to believe Mrs. Ford's representations to the SSA that she was disabled and unable to work from at least April 2003 until January 2006, then it is impossible for us also to believe that she was able to work at CLECO during the same time period. The two statements are simply inconsistent.

In an attempt to harmonize Mrs. Ford's seemingly conflicting positions, Plaintiffs' counsel provides the following explanation (Doc. 43):

> It is inherent in a person's statement to the [SSA] for benefits that she is unable to work. This does not, in and of itself, judicially estop the plaintiff from qualifying under the ADA. Mrs. Ford can argue just as easily that her statement to the [SSA] that she is eligible for benefits is a sufficient allegation of disability since, in order to be eligible for social security benefits, one must prove that she cannot work. By alleging that her disability entitles her to disability benefits, plaintiff has sufficiently alleged that her disability substantially limits a major life activity, i.e., of working.

Counsel then transitions into a discussion of Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468 (5th Cir. 2006), a case which is completely irrelevant to the inquiry of whether Mrs. Ford's assertions to the SSA judicially estop her from succeeding on her ADA claim.

We understand Plaintiffs' argument as follows: A party who represents to the SSA that she is disabled is not *necessarily* estopped from successfully litigating an ADA claim. Mrs. Ford's claim that she is disabled is really about her limitation in a major life activity such as working. However, Plaintiffs' reference to "disability benefits" indicates to us that Plaintiffs are still focused on ERISA-type claims rather than the ADA. The SSA and ERISA are concerned with whether disability benefits are appropriate. The ADA, the statute pursuant to which Plaintiffs make their claims, only addresses an employer's behavior with respect to disabled employees and whether damages, not benefits, are appropriate when an employer fails to abide by the ADA's provisions. The ADA aims to rectify the inappropriate behavior which occurs when a disabled employee is wrongfully terminated. For this reason, the ADA requires payment of *damages* in situations of wrongful termination. Whether an employee's termination was lawful is irrelevant in a SSA or ERISA claim for benefits.

Plaintiffs again confuse the statutes by mixing the "disability benefits" language with language about a "major life activity" from the ADA's definition of disability. With the "major life activity" language Plaintiffs appear to imply that Mrs. Ford claimed she was disabled to the SSA because she could not perform the major life activity of working. When we look at the evidence from the SSA in conjunction with Mrs. Ford's deposition testimony, it is apparent that Mrs. Ford did not employ any artful use of the definition of "disability" when she told the SSA that she was disabled and completely unable to work. Rather, we have assumed Mrs. Ford used the common, everyday definition of disability, i.e. a physical or mental impairment that causes some kind of incapacity.

Assuming Mrs. Ford represented herself as having a disability as the term is generically used, we still find her positions inconsistent.

Further, even if Mrs. Ford *did* consciously rely on the ADA definition of disability as Plaintiffs seem to imply, her foresight would not change the problem Plaintiffs face: to qualify for SSDI, Mrs. Ford must have been unable to work not only at her job at CLECO, but in *any* kind of substantial gainful work. The SSA defines disability as "the inability to do *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a)(emphasis added). Mrs. Ford crisply testified in her deposition she told the SSA she could not work at all. Mrs. Ford is now arguing to the Court that *at the time of her application to the SSA*, she was fully able to work for CLECO, even without any accommodation. Those two positions simply cannot be reconciled without a more substantial, thorough exposition from Plaintiffs. See Cleveland, 526 U.S. at 807. The record contains no explanation by Plaintiffs other than the foregoing argument.

In addition to Plaintiffs' ADA claim, Plaintiffs invoked the Court's supplemental jurisdiction "on account of the violations of Louisiana law and other causes of action that arise out of the same set of facts." (Doc. 11). They also allege CLECO's actions constitute a denial of equal protection of the laws in violation of the Fifth and Fourteenth Amendments to the United States Constitution and the Louisiana Constitution. (Doc. 1). None of these claims has been fleshed out to explain what these alleged violations were and we see no evidence to support them. Further, although CLECO moved for summary

9

judgment on all pending claims, Plaintiffs made no argument as to why these state law and constitutional claims should not be dismissed.

We find there is no evidence that any claims Plaintiffs may have for equal protection or state law violations can be substantiated. Further, Mrs. Ford's representations of complete disability and inability to work to the SSA are inherently contradictory to and have not been reconciled with the posture that she was fully able to work despite her disability. Mrs. Ford is judicially estopped from pursuing her ADA claims. Rather than seeing merit in Mrs. Ford's claims, it appears to us that she is attempting to take a third bite at the apple, a bite to which she is not entitled. Mrs. Ford is now receiving benefits from the Social Security Administration because she is unable to work and she settled her suit with UnumProvident, presumably because it wrongfully denied her claim for long term disability when it originally determined she was capable of working. After representing to the SSA and UnumProvident that she was unable to work, it is inappropriate for Mrs. Ford to now claim that she could have worked as to recover from CLECO. Therefore, Defendant's Motion for Summary Judgment must be granted.

SIGNED on this 21st day of July, 2006, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge